UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ROCELIOUS WILLIAMS,

                Petitioner,

v.                              CASE NO. 02-CV-73068-DT
                              HONORABLE ARTHUR J. TARNOW

KURT JONES,

                Respondent.

_____/

## OPINION AND ORDER GRANTING PETITIONER'S APPLICATION FOR THE WRIT OF HABEAS CORPUS PETITION

Petitioner Rocelious Williams has filed an application for the writ of habeas corpus under 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state court conviction for a narcotics offense. The Court has concluded for reasons given below that Petitioner was denied his constitutional right to conflict-free representation and that his waiver of the right was not voluntary and intelligent. Therefore, the habeas petition must be granted.

### I. Background

In 1999 Petitioner and his brother Kaerkye Williams were tried jointly in Wayne County Circuit Court. They were represented by the same attorney and waived their right to separate attorneys in the following colloquy, which occurred after *voir dire*:

THE COURT:  Mr. Kaerkye Williams and Mr. Rocelious Williams, I want to let you know, of course, that you have a right to each have your own attorney, and that there is always the possibility during a trial that there could be some conflicting defenses in a case.

I ask you to let this court know whether you have considered that, talked to your attorney about that, and whether you are both in agreement that he represent both of you in this case?

DEFENDANT ROCELIOUS WILLIAMS:   Yes.

DEFENDANT KAERKYE WILLIAMS:  Yes.

THE COURT:  Could each of you state your understanding of that on the record for me?

Rocelious Williams?

DEFENDANT ROCELIOUS WILLIAMS:  Me and Mr. Harper, we had a talk about it.  I understand what I was doing.  I don't think we will be in conflict.

THE COURT:  You wish to have him represent both of you?

DEFENDANT ROCELIOUS WILLIAMS:  Yes, I want to have him represent us.

THE COURT:  And Mr. Kaerkye Williams?

DEFENDANT KAERKYE WILLIAMS:  Yes.

THE COURT:  That's your position, also?

DEFENDANT KAERKYE WILLIAMS:   Yes.

THE COURT:  You're requesting of this Court that you both be allowed to have the same attorney?

DEFENDANT KAERKYE WILLIAMS:  Yes.

MR. HARPER [defense counsel]:  For the record, Your Honor, there

2

*Williams v. Jones*, No. 02-CV-73068-DT

(sic) mother Miss Margie Williams is in court, we had this discussion on a number of occasions.

     Is that correct, Mrs. Williams?

     MRS. WILLIAMS:  That's correct.

     MR. HARPER:  You are also in agreement?

     MRS. WILLIAMS:  Yes.

(Tr. Jan. 25, 1999, at 84-86).  The colloquy ended with defense counsel stating that Mrs. Williams had retained him to represent both her sons.

On January 28, 1999, the jury found Petitioner guilty, as charged, of possession with intent to deliver 50 to 224 grams of cocaine.  The same jury convicted Kaerkye Williams of possessing less than 25 grams of cocaine.[1]

The convictions arose from the execution of a search warrant at 15087 Ward Street in Detroit, Michigan on July 17, 1998.  Keith Norrod, who was the first police officer to enter the Ward Street house, testified that Petitioner was seated on a couch by himself when Norrod first saw him.  Petitioner reached to his right side and threw a brown paper bag across the room.  Officer Gary Diaz retrieved the bag, which contained three knotted plastic bags with suspected cocaine.

---

[1]  Kaerkye had been charged with possession with intent to deliver less than 50 grams of cocaine.

*Williams v. Jones*, No. 02-CV-73068-DT

Officer Tyrone Spencer provided outside security during execution of the search warrant. He observed Kaerkye Williams lean out an upstairs window and throw a clear plastic baggie onto the lawn. Spencer picked up the bag and went inside the house where he identified Kaerkye Williams as the person who threw drugs out the window.

The parties stipulated that the bag seized by Officer Diaz in the living room contained 83.64 grams of a powder containing cocaine and that the bag retrieved outside by Officer Spencer contained 22.43 grams of a substance containing cocaine. The police also confiscated a digital scale, small zip-lock bags, a razor blade, a loaded assault pistol, a shotgun, and a loaded revolver from the main floor of the house.

Yarden Proctor testified for the defense that he resided at the Ward Street house with the defendants, who were his cousins, and his aunt. He claimed that he did not throw anything out the window and that Kaerkye Williams was asleep upstairs when the police raided the house.

Kaerkye Williams testified that he was in bed when the police arrived. He also claimed that he did not throw anything out of the window, and he denied telling the police that the dope in the house belonged to Yarden. He maintained that the police must have planted the drugs, baggies, and guns (with the exception of the shotgun) in the house.

Petitioner testified that he was lying on a couch when the police arrived and that his brother Kaerkye and his cousin Yarden Proctor were upstairs at the time. The police took $300 - $400 from him and some money that had been lying on the mantle. He

4

*Williams v. Jones*, No. 02-CV-73068-DT

denied throwing a bag on the floor when the police entered the house, and he claimed that he was not aware of drugs, weapons, zip-lock bags, a scale, or a razor in the house.

The defendants' mother, Margie Williams, testified that she lived at 15087 Ward Street and that she left over $2,000.00 on the mantle for the plumber before leaving for work on July 17, 1998. She also testified that she had never observed drugs being sold in the house.

As previously noted, Petitioner was convicted of possession with intent to deliver 50 to 224 grams of cocaine. The trial court sentenced him as a second habitual offender to ten to thirty years in prison for the crime.

Petitioner raised his habeas claims in the Michigan Court of Appeals. He alleged that his attorney's dual representation implicated his Sixth Amendment right to effective assistance of counsel, and he maintained that his waiver of conflict-free representation was legally deficient. The court of appeals disagreed and affirmed Petitioner's conviction in an unpublished *per curiam* opinion. *See People v. Williams*, No. 218597 (Mich. Ct. App. May 18, 2001). Petitioner raised the same claims in the Michigan Supreme Court, but on December 21, 2001, the supreme court denied leave to appeal because it was "not persuaded that the questions presented should be reviewed." *People v. Williams*, 465 Mich. 935; 638 N.W.2d 757 (2001).

Petitioner filed his habeas corpus petition on July 26, 2002. His grounds for relief read as follows:

5

*Williams v. Jones*, No. 02-CV-73068-DT

I.      The petitioner was deprived of due process of law, where
        there was a  Sixth Amendment violation; where a single
        attorney represented both the petitioner, along with his
        brother, who were charged with the intent to deliver cocaine,
        without explaining completely, the full panoply of possible
        conflicts of interest, which could subsequently arise,
        hindering Petitioner's liberty interests due to such joint
        representation.

II.     The petitioner was deprived [of] due process of law, where
        the trial court failed to obtain a sufficient and valid waiver of
        any conflict of interest emanating from the dual
        representation, where the trial court waited until after the jury
        selection to make a record, and failed to conduct an inquiry,
        which would ensure that any waiver was truly, knowingly,
        and intelligently made.

III.    Petitioner was denied due process of law, where the
        prosecution denied him the right to a fair trial by
        impermissibly introducing testimony that at some time during
        police interrogation, Petitioner exercised his right to remain
        silent and by affirmatively arguing that circumstance[] as
        substantive evidence of guilt.

Respondent argues in an answer to the habeas petition that Petitioner's claims are waived,

procedurally defaulted, not cognizable, or without merit.

## II.  Standard of Review

Section 2254(d) of Title 28, United States Code, imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim –

6

*Williams v. Jones*, No. 02-CV-73068-DT

> (1)     resulted in a decision that was contrary to, or involved an
>          unreasonable application of, clearly established Federal law,
>          as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable
>          determination of the facts in light of the evidence presented in
>          the State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court

factual determinations.  28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has

on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06

(2000).  An "unreasonable application occurs" when "a state-court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case."  *Id.* at 409.  A

federal habeas court may not "issue the writ simply because that court concludes in its

independent judgment that the relevant state-court decision applied clearly established

federal law erroneously or incorrectly.  Rather, that application must also be

unreasonable."  *Id.* at 411.


## III.  Discussion

The first habeas claim alleges that Petitioner was deprived of his Sixth

Amendment right to effective assistance of counsel, because a single attorney represented

7

*Williams v. Jones*, No. 02-CV-73068-DT

him and his brother at trial.  The Michigan Court of Appeals determined that Petitioner

was precluded from raising this claim on appeal because he waived the right to a separate

attorney.

The second issue raised by Petitioner is the failure to comply with Michigan Court

Rule 6.005(F).  This issue will be discussed in the context of the first issue, because

Petitioner alleges that the trial court failed to conduct a proper inquiry to ensure that his

waiver of conflict-free counsel was knowingly and intelligently made.  The Michigan

Court of Appeals found noncompliance with the court rule, but determined that the

purpose and intent of the rule were accomplished and that any conflict of interest did not

affect defense counsel's performance.

The third and final habeas claim alleges that the prosecutor improperly introduced

testimony concerning Petitioner's exercise of his right to remain silent during police

interrogation.  Petitioner maintains that he had a constitutional right to refuse to answer

the officer's questions and that the prosecutor's cross-examination and closing argument

on the issue were a direct attack on his Fifth Amendment rights.[2]

### A.  Procedural Default

Respondent argues that Petitioner's claims are procedurally defaulted.  A

---

[2]  The Court declines to address Petitioner's third claim, because the prosecutor is now on notice that the questions may have been improper.  Any impropriety will not recur on re-trial.

*Williams v. Jones*, No. 02-CV-73068-DT

procedural default is "a critical failure to comply with state procedural law." *Trest v.*

*Cain*, 522 U.S. 87, 89 (1997).  The doctrine of procedural default provides that,

> [i]n all cases in which a state prisoner has defaulted his federal claims in
> state court pursuant to an independent and adequate state procedural rule,
> federal habeas review of the claims is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

In Michigan, "'[a] defendant may not waive objection to an issue before the trial

court and then raise it as an error' on appeal." *People v. Carter,* 462 Mich. 206, 214; 612

N.W.2d 144, 149 (2000).  The Michigan Court of Appeals cited *Carter* in its opinion and

concluded that Petitioner made an informed waiver of his right to separate counsel and

that his waiver extinguished any error and precluded him from raising the issue on appeal.

An exception to the rule requiring that issues first be properly raised in the trial

court exists for "compelling and extraordinary circumstances." *People v. Grant*, 455

Mich. 535, 546; 520 N.W.2d 123, 128 (1994).  Those circumstances exist in this case.  A

mistake or misapplication of Supreme Court precedent occurred.  *See Cuyler v. Sullivan*,

446 U.S. 335 (1980).  Petitioner's waiver of his right to a separate attorney was counseled

by the attorney who was operating under a conflict of interest.  Therefore, reliance on the

doctrine of procedural default is misplaced.  The Court will proceed to address the merits

of Petitioner's first and second claims.

9

*Williams v. Jones*, No. 02-CV-73068-DT

## B.  Substantive Review of the Claims

Petitioner alleges that his attorney's dual representation deprived him of his Sixth Amendment right to effective assistance of counsel and that his waiver of conflict-free representation was legally deficient.  If defense counsel was the reason for Petitioner's waiver, Petitioner's waiver was involuntary, because defense counsel himself operated under a conflict of interest.

### 1.  Case Law

"Joint, or dual, representation occurs where a single attorney represents two or more co-defendants in the same proceeding."  *Moss v. United States*, 323 F.3d 445, 455 (6th Cir.), *cert. denied*, 540 U.S. 879 (2003).  The Supreme Court stated in *Holloway v. Arkansas,* 435 U.S. 475, 482-83 (1978), that "[r]equiring or permitting a single attorney to represent codefendants . . . is not per se violative of constitutional guarantees of effective assistance of counsel."

*Holloway* involved a public defender who represented three co-defendants in a joint trial. The trial court had denied defense counsel's motion for appointment of separate counsel.  The Supreme Court held that the trial court's failure to appoint separate attorneys, or to ascertain the risk of a conflict of interest, deprived the petitioners of their Sixth Amendment right to assistance of counsel.

In the subsequent case of *Cuyler v. Sullivan*, the Supreme Court was faced with a situation where three defendants had been represented in separate trials by two privately

10

*Williams v. Jones*, No. 02-CV-73068-DT

retained attorneys. Neither Sullivan, nor his attorneys, objected at trial to the multiple representation. The Supreme Court held that "a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. The Supreme Court went on to say that "[t]he possibility of conflict is insufficient to impugn a criminal conviction" and that a defendant has not established the constitutional predicate for his ineffective-assistance claim until he "shows that his counsel actively represented conflicting interests." *Id.* at 350. More recently, the Supreme Court repeated that, when defense counsel does not protest his inability to simultaneously represent more than one defendant, the petitioner must establish that a conflict of interest adversely affected his counsel's performance. *Mickens v. Taylor*, 535 U.S. 162, 173-74 (2002).

Also instructive is *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004), a case in which a mother and daughter were charged with possessing drugs found in the house where they both lived. Because the same attorney represented both women, the Sixth Circuit determined that the attorney labored under a conflict of interest even though the two women were tried separately. The Sixth Circuit stated that, "[u]nder the rule of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), when an attorney's representation of multiple defendants, though not objected to at trial, results in an actual conflict of interest that adversely affects the attorney's performance, the defendants' Sixth Amendment rights have been violated, *even without a showing that the conflict caused the defendant to lose*

11

*Williams v. Jones*, No. 02-CV-73068-DT

*his or her case."* *McFarland*, 356 F.3d at 705 (emphasis added).

"An 'actual conflict of interest' therefore is a term of art requiring a conflict of

interest and adverse effect." *Moss*, 323 F.3d at 467 n. 23. A habeas petitioner must

> point to 'specific instances in the record to suggest an actual conflict or
> impairment of [his] interests.' . . . [He] must make a factual showing of
> inconsistent interests and must demonstrate that the attorney 'made a choice
> between possible alternative courses of action, such as eliciting (or failing
> to elicit) evidence helpful to one client but harmful to the other. If he did
> not make such a choice, the conflict remained hypothetical.' . . . There is
> no violation where the conflict is 'irrelevant or merely hypothetical'; there
> must be an 'actual significant conflict.'

*Thomas v. Foltz*, 818 F.2d 476, 481 (6th Cir. 1987) (quoting *United States v. Mers*, 701

F.2d 1321, 1328 (11th Cir. 1983)). "Causation can be proved circumstantially, through

evidence that the lawyer did something detrimental or failed to do something

advantageous to one client that protected another client's interests." *McFarland*, 356

F.3d at 706.


## 2. Impact of the Joint Representation

Defense counsel's dual representation impacted Petitioner in a variety of ways.

First, it prevented Petitioner from arguing that his brother possessed both bags of cocaine

found in the house where they lived. In a case involving shared possessions, the best

defense for each defendant might be to claim, and attempt to prove, that the narcotics

12

*Williams v. Jones*, No. 02-CV-73068-DT

belonged to the other defendant.  *Serra v. Michigan Dep't of Corrs.*, 4 F.3d 1348, 1353

(6th Cir. 1993).  When counsel fails to pursue a strong and obvious defense that would

have inculpated the other client, but provided no countervailing benefit to the defendant,

and when there is no other explanation for counsel's conduct, the facts amount to

evidence of disloyalty under *Sullivan.  McFarland*, 356 F.3d at 707.

Second, dual representation placed defense counsel in the position of having to

maintain that both Petitioner's and his brother's claims of innocence were credible.

"[W]hile it was plausible that one [defendant] in the house was innocent of involvement

with the drugs, it was far less plausible that both were.  [Defense counsel] thus took on a

heavier burden than would have been necessary in defending [Petitioner] alone."  *Id.* at

708-09.

Third, joint representation may have led the jury to believe that Petitioner and his

brother were a unit and were actively employed together in the narcotics trade.  The jury

might have reasoned that Petitioner and his brother adopted a common defense, because

they had been engaged in a common enterprise and wanted to share a common fate for

their activities.

Fourth, the nature of the charges brought against each defendant differed

significantly in severity.  Petitioner was charged with possession with intent to deliver 50

to 224 grams of cocaine, an offense that called for a mandatory minimum sentence of ten

years in prison.  His brother was charged with possession with intent to deliver less than

13

*Williams v. Jones*, No. 02-CV-73068-DT

50 grams of cocaine, an offense that carried a penalty of at least one year in prison or probation for life.  Petitioner's brother could have been charged with the same offense as Petitioner on an aiding and abetting theory.  Thus, his brother had a strong incentive for proceeding to trial as rapidly as possible to avoid having the complaint amended to charge him with a greater offense.  *Cf. Robinson v. Stegall*, 343 F. Supp. 2d 626, 637 (E.D. Mich. 2004) (Tarnow, J.).  Petitioner, on the other hand, might have benefitted from a delay in the trial and additional negotiations to reduce the charge or mandatory sentence in return for a guilty plea.

Fifth, defense counsel elicited testimony suggesting that the seller of drugs on the day before the raid was six feet tall and 220 pounds.  This testimony benefitted Petitioner's brother, who was taller and thinner than the alleged seller.  At the same time, the testimony tended to incriminate Petitioner, whose height and weight more closely fit the description of the seller.

Finally, defense counsel's decision to call Yarden Proctor as a witness benefitted Petitioner's brother, but not Petitioner.  Proctor's testimony corroborated Kaerkye Williams' testimony and tended to make Petitioner appear to be the only guilty party. "[T]he existence of an actual conflict and adverse effects from it are more likely to be evident in cases in which an attorney takes positive steps on behalf of one client prejudicial to another than in cases in which the attorney's actions are based on inaction and are passive . . . ." *United States v. Gambino*, 864 F.2d 1064, 1070 (3d Cir. 1988)

14

*Williams v. Jones*, No. 02-CV-73068-DT

(quoted in *McFarland*, 356 F.3d at 706).

Petitioner has demonstrated that an actual conflict of interest adversely affected his attorney's performance.  Defense counsel's apparent failure to anticipate the disadvantages of dual representation amounted to ineffective assistance.  Defense counsel's failure to advise Petitioner of the risks of dual representation no doubt was the reason for Petitioner's lack of an objection to his attorney's dual representation and to the trial court's inquiry.  When counsel is burdened by an actual conflict of interest, "counsel breaches the duty of loyalty, perhaps the most basic of counsel's duties."  *Strickland v. Washington*, 466 U.S. 668, 692 (1984).  Being represented by an attorney who had a conflict of interest was equivalent to having no attorney at all.

### 3.  The State Court's Decision

The Michigan Court of Appeals concluded that, even if Petitioner preserved his conflict-of-interest claim, he failed to establish a *prima facie* case of ineffective assistance of counsel.  The court of appeals determined that there was no actual conflict of interest, because both defendants presented the identical defense.

The court of appeals conceded that defense counsel and the trial court did not

15

*Williams v. Jones*, No. 02-CV-73068-DT

comply with subsections (1) and (3) of Michigan Court Rule 6.005(F).[3]  The court went

on to say that there was strong evidence to support the verdict and that Petitioner had

failed to demonstrate that anything would have been different if he had been represented

by a separate attorney.  The court of appeals concluded that Petitioner's substantial rights

were not affected by the violation of Rule 6.005(F) and, even if they were affected, the

strong evidence against him precluded him from demonstrating actual innocence.

The court of appeals used the wrong standard.  Petitioner was not required to prove

---

[3]  Rule 6.005(F) reads:

> **(F) Multiple Representation.**  When two or more indigent defendants are jointly charged with an offense or offenses or their cases are otherwise joined, the court must appoint separate lawyers unassociated in the practice of law for each defendant.  Whenever two or more defendants who have been jointly charged or whose cases have been joined are represented by the same retained lawyer or lawyers associated in the practice of law, the court must inquire into the potential for a conflict of interest that might jeopardize the right of each defendant to the undivided loyalty of the lawyer.  The court may not permit the joint representation unless:
>
> (1) the lawyer or lawyers state on the record the reasons for believing that joint representation in all probability will not cause a conflict of interests;
>
> (2) the defendants state on the record after the court's inquiry and the lawyer's statement, that they desire to proceed with the same lawyer; and
>
> (3) the court finds on the record that joint representation in all probability will not cause a conflict of interest and states its reasons for the finding.

16

*Williams v. Jones*, No. 02-CV-73068-DT

that the outcome of the trial would have been different if he had been represented by a separate attorney. *See Sullivan*, 446 U.S. at 349-50 ("[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief."); *see also McFarland*, 356 F.3d at 705 ("[W]hen an attorney's representation of multiple defendants, though not objected to at trial, results in an actual conflict of interest that adversely affects the attorney's performance, the defendants' Sixth Amendment rights have been violated, even without a showing that the conflict caused the defendant to lose his or her case.") ; *cf. Strickland*, 466 U.S. at 687 and 694 (explaining the two components of ineffective assistance of counsel: deficient performance and prejudice, i.e., "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  It was sufficient to show that "counsel actively represented conflicting interests" and that the conflicting interests affected the adequacy of the attorney's representation.  *Sullivan*, 446 U.S. at 350.

It is true that both defendants denied throwing aside bags of cocaine when the police arrived.  Both men also claimed that they did not know drugs, drug paraphernalia, and weapons were contained in the house.  However, their testimony conflicted with the police officers' testimony, and the trial amounted to a swearing match or credibility contest.  The evidence was not overwhelming if the jury chose to believe the defendants and other defense witnesses.

17

*Williams v. Jones*, No. 02-CV-73068-DT

Petitioner has shown that at least one choice between possible alternative courses of action was caused by his attorney's conflict. Therefore, the state court's conclusion that Petitioner failed to establish a claim of ineffective assistance of counsel was an unreasonable application of Supreme Court precedent.

The state court's decision that the violation of Michigan Court Rule 6.005(F) did not seriously affect the fairness of the proceedings also was unreasonable. Although the violation of state law in itself is not a basis for granting habeas corpus relief, *Pulley v. Harris*, 465 U.S. 37, 41 (1984), Petitioner contends that his waiver of a separate attorney was constitutionally infirm because it was not knowingly and intelligently made.

Rule 6.005 was adopted to protect an accused's Sixth Amendment rights. *Clay v. Birkett*, No. 04-71996, at 17, 2005 WL 2347099, at *8 (E.D. Mich. Sept. 23, 2005) (Tarnow, J.) (unpublished). The purpose of subsection 6.005(F) is to insure that the defendant's waiver of joint representation meets the constitutional requirement of being knowingly and voluntarily made. The court rule is not binding on federal courts, but federal courts "have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *United States v. Wheat*, 486 U.S. 153, 160 (1988). Rule 6.005(F) is the State's best effort to deal with the issue of multiple representation; it is an example of what should have been done in this case. The question is whether Petitioner's waiver of a separate attorney was "knowing, intelligent, and voluntary." *United States v. Osborne,*

18

*Williams v. Jones*, No. 02-CV-73068-DT

402 F.3d 626, 630 (6th Cir. 2005) (quoting *United States v. Straughter*, 950 F.2d 1223,

1234 (6th Cir. 1991)).

### a. Waivers of Constitutional Rights

A waiver ordinarily is "an intentional relinquishment or abandonment of a known

right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Whether there has been

an intelligent waiver of a constitutional right must depend on the relevant facts and

circumstances. *Id.* "[T]he defendant must be aware of the conflict [of interest], realize

the consequences to his defense that continuing with counsel under the onus of a conflict

could have, and also be aware that he has the right to obtain other counsel . . . ." *United

States v. Levine*, 794 F.2d 1203, 1206 (7th Cir. 1986) (citing *Zuck v. Alabama*, 588 F.2d

436, 440 (5th Cir. 1979)).

"To ensure that a defendant's waiver is made with eyes wide open, a judge must

thoroughly investigate the circumstances under which the waiver is made." *Fowler v.

Collins*, 253 F.3d 244, 249 (6th Cir. 2001) (citing *Von Moltke v. Gillies*, 332 U.S. 708,

724 (1948) (plurality)). "A trial court's determination as to the propriety of a waiver

should appear on the record." *Id.* (citing *Johnson*, 304 U.S. at 465).

A defendant's assertion that he is informed of his constitutional right and desires to

waive the right does not automatically end the trial judge's responsibility. *Id.* at 250

(quoting *Von Moltke*, 332 U.S. at 724). "[A] court confronted with and alerted to possible

conflicts of interest must take adequate steps to ascertain whether the conflicts warrant

19

separate counsel." *Wheat*, 486 U.S. at 160.   "[W]here a court justifiably finds an actual

conflict of interest, there can be no doubt that it may decline a proffer of waiver, and

insist that defendants be separately represented." *Id.* at 162.  A reviewing court "must

indulge every reasonable presumption against waiver of an individual's fundamental

constitutional rights." *Fowler,* 253 F.3d at 249 (citing *Johnson*, 304 U.S. at 464).

### b.  Analysis

Petitioner was almost twenty-four years of age at trial.  He had earned a GED, and

his criminal history included a prior felony conviction.  He alleges that defense counsel

first spoke to him about a possible conflict of interest immediately before the trial

commenced.  He contends that defense counsel led him to believe during their five-

minute conversation that dual representation would be in his best interest.

It is unclear from the record whether Petitioner actually understood the meaning of

a conflict of interest and its implications.  He alleges that he was not made aware of the

severity of the issue by either the trial court or counsel.  He was forced to rely on the

advice of the conflicted attorney, whose advice was suspect.  Defense counsel did not

provide any reasons for believing that joint representation would benefit the defendants

and not cause a conflict of interest.

The trial court likewise failed to provide reasons for its implicit conclusion that

joint representation would not cause a conflict of interest.  The court did not apprise

Petitioner of the disadvantages of dual representation, and it did not say whether it would

*Williams v. Jones*, No. 02-CV-73068-DT

appoint counsel if Petitioner requested a separate attorney.  Defense counsel was retained, and Petitioner may have been felt obliged for financial reasons to waive representation by a separate attorney.

The trial court also did not offer to postpone the trial if Petitioner wanted another attorney.  The trial court waited until after *voir dire* to make a record of Petitioner's waiver.  Petitioner needed legal advice before trial.  As this Court stated in *Robinson*, "adverse effects from a conflict of interest may manifest themselves not only at trial but during pretrial . . . proceedings and . . . such proceedings must be considered when examining a potential conflict of interest."  *Robinson*, 343 F. Supp.2d at 637 (citing *Holloway*, 435 U.S. at 490-91).  By waiting until after the jury was impaneled to place the defendants' waiver on the record, the trial court exerted subtle pressure on the defendants to accept the current situation.  In light of the strong presumption against the waiver of constitutional rights, this Court concludes that there was not an adequate on-the-record waiver and that Petitioner's waiver of the right to a separate attorney was not knowing, intelligent, and voluntary.

21

*Williams v. Jones*, No. 02-CV-73068-DT

## IV.  Conclusion

The state court's adjudication of Petitioner's first and second claims resulted in an unreasonable application of clearly established federal law, as determined by the United States Supreme Court.  Consequently, Petitioner's application for the writ of habeas corpus [Doc. #1, July 26, 2002] is conditionally **GRANTED**.  The State shall release Petitioner unless it re-tries him within ninety (90) days.


s/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

s/Catherine A. Pickles
Judicial Secretary

22